| |
|---|
| **Seungook Kong v Laundress, LLC.** |
| 2026 NY Slip Op 30727(U) |
| February 26, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 153041/2024 |
| Judge: Dakota D. Ramseur |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. DAKOTA D. RAMSEUR**  PART  **34M**

_Justice_

------------------------------------------------------------------X

SEUNGOOK KONG,

　　　　　　　　　　　Plaintiff,

　　　　　- v -

THE LAUNDRESS, LLC., CONOPCO, INC., THE NEW
LONDON PHARMACY, INC.

　　　　　　　　　　　Defendant.

------------------------------------------------------------------X

| INDEX NO. | 153041/2024 |
|---|---|
| MOTION DATE | 08/08/2024, 09/30/2024 |
| MOTION SEQ. NO. | 003 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 26, 27, 30, 31, 32, 33, 34

were read on this motion to/for 　　　　　DISMISS　　　　　.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 36, 37, 38, 39, 40
were read on this motion to/for 　　　　　DISMISS　　　　　.

On April 2, 2024, plaintiff Seungook Kong commenced the instant personal injury and products liability action against defendants The Landress LLC (hereinafter, "The Laundress"), Conopco, Inc. d/b/a Unilever Home and Personal Care USA and The New London Pharmacy, Inc (collectively, "defendants").[1] Plaintiff asserts causes of action for negligence, design defect, manufacturing defect, failure to warn, breach of express and implied warranties, violation of New York General Business Law §§ 349 and 350, and punitive damages. In Motion Sequence 003, The Laundress moves to dismiss each of these causes of action pursuant to 3211(a)(7) for failure to state a cause of action. First, it argues that, for each claim, plaintiff has not sufficiently pled that one of defendants' products—whether conditioner, detergent, stain removers, or

---

[1] Pursuant to the stipulation of partial discontinuance entered July 26, 2024, plaintiff discontinued this action against defendant Conopco, Inc. d/b/a Unilever Home and Personal Care USA only. (NYSCEF doc. no. 25, stip. of discontinuance.)

153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No. 003 004

Page 1 of 13

[* 1]

bleach—caused his injuries; second, as to each specific causes of action, The Laundress contends that plaintiff has failed to ple ad one or more of the requisite elements, such that dismissal is required. Plaintiff opposes the motion in its entirety. (NYSCEF doc. no. 31, plaintiff's memo of law.)

In Motion Sequence 004, The New London Pharmacy, Inc. moves to dismiss the causes of action asserted against it for reasons stated in The Laundress's motion. (NYSCEF doc. no. 36, notice of motion; NYSCEF doc. no. 37, New London Pharmacy affirmation in support.) Motion Sequence 003 and 004 are consolidated for resolution herein.[2]

## BACKGROUND

In his amended complaint, plaintiff alleges that he regularly purchased and used many as 19 different products manufactured by The Laundress and distributed by New London Pharmacy between 2019 and 2022.[3] (NYSCEF doc. no. 22, ¶28, Plaintiff's Amended Complaint). These products include: Fabric Conditioner Classic, Number 10 Detergent, Number 10 Fabric Conditioner, Signature Detergent Classic, Stain Solution, Surface Cleaner., Wool & Cashmere Shampoo, No. 10 Fabric Fresh, All Purpose Bleach Alternative, Fabric and Room Spray, Fabric

---

[2] In *Hernandez v The Laundress, LLC* (NYSCEF index no. 15869/2023), The Laundress moved to consolidate it with this action and *Baron v The Laundress, LLC* (NYSCEF index no. 161675/2023). That motion is unopposed and was granted pursuant to a separate order dated February 20, 2026. The Court also notes that it resolved The Laundress's motion to dismiss in these two other cases in separate decisions.

[3] As against New London Pharmacy, plaintiff alleges that it "marketed, sold, manufactured, and/or distributed Laundress products." (NYSCEF doc. no. 22 at ¶11.) However, it is clear from the complaint that The Laundress manufactured and produced the alleged tainted products and that plaintiff purchased them from the New London Pharmacy on 8th Avenue. (*Id.* at 41.) There are no, at least non-conclusory, allegations that New London Pharmacy designed or manufactured of any the products listed in the complaint.

**153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL**
**Motion No.  003 004**

Page 2 of 13

2 of 13

[* 2]

Fresh Classic, Fabric Spray, Home Spray, Linen Spray, Signature Detergent and Fabric Conditioner Duo, and Signature Detergent Fresh Wash in a variety of sizes. (*Id.* at ¶ 28).

In around July 2021, plaintiff alleges that he began suffering from an eye infection after having used these various products. An eye culture was taken on or about July 30, 2021, which revealed the presence of the bacteria *klebsiella aerogenes*. (*Id.* at ¶ 98) Thereafter, on August 10, 2021, plaintiff underwent emergency craniofacial surgery, during which his surgeon found extensive evidence of this infection. (*Id.* at ¶99.) Plaintiff further alleges that, due to these injuries, he later underwent facial reconstruction surgery that required doctors to insert titanium hardware in his face and remove four implants from a previous facial surgery. (*Id.* at ¶¶94, 102.)

On November 17, 2022, The Laundress issued a safety notice covering as many as eight million units of its products. (*Id.* at ¶74.) The safety notice read:

"This safety notice is to inform you to immediately stop using all The Laundress products in your possession. We have identified the potential presence of elevated levels of bacteria in some of our products that present a safety concern. Based on our investigation to date, we are not aware of any adverse health impacts related to this issue. Your safety and the quality of our products is our top priority. We are working closely with our suppliers to ensure that our products meet our standards and expectations. We apologize for this situation and appreciate your attention to this notice. We will communicate an update about the products

**153041/2024 KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL** Page 3 of 13
Motion No. 003 004

[* 3] 3 of 13

impacted and how to obtain a reimbursement or replacement as soon as possible. The Laundress Team." (*Id.* at ¶75.)

Two weeks later, on or about December 1, 2022, the U.S. Consumer Product Safety Commission issued a recall covering the eight million Laundress products. (*Id.* at ¶76.) In its announcement of the report, the Commission stated, "The recalled products can contain bacteria, including *Burkholderia cepacian* complex, *Klebsiella aerogenes*, and multiple different species of *Pseudomanas.*" (*Id.*) The statement also noted that, "To date, testing has identified bacteria in certain recalled products, including those produced between January 2021 and September 2022." (*Id.*) Plaintiff alleges that he contracted the bacterial virus that caused his injuries from the Laundress products he purchased and used. (*Id.* at ¶103).

According to the complaint, prior to his infection, defendants became aware that eleven customers had reported bacterial infections yet continued to market and sell the contaminated products. (*Id.* at ¶39-41 ["Defendants further knew or had reason to know between at least approximately 2019 to 2022 that, even prior to any public recalls and including but not limited to before and at the time of plaintiff's purchases, that the Laundress products were at risk of contamination"].) Given this, plaintiff alleges that defendants did not take adequate safety measures to ensure their products were not contaminated with bacteria before being manufactured, distributed, and sold to customers. (*Id.*)

As described above, defendants move to dismiss each of plaintiff's causes of action. Since their argument that plaintiff's injuries were not proximately caused by exposure to

153041/2024   KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No. 003 004

Page 4 of 13

[* 4]

4 of 13

their products would be grounds for dismissal of the entire complaint, the Court will first address this threshold issue.[4] Thereafter, the Court will address the arguments specific to each cause of action.

## DISCUSSION

Pursuant to CPLR § 3211(a)(7), "[a] party may move for judgment dismissing one or more causes of action against him on the ground that . . . the pleading fails to state a cause of action." When it considers a motion to dismiss for failure to state a cause of action, the court accepts the facts in the complaint as true, gives plaintiff the benefit of every possible favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory. (*Connaughton v Chipotle Mexican Grill Inc.*, 26 NY3d 137, 141 [2017]; *see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002].) The court considers whether the plaintiff has a cause of action, not whether he has simply stated one. (*Leon v Martinez*, 84 NY2d 83, 88 [1994].) Accordingly, the court's role in a motion to dismiss is not to determine whether a plaintiff can ultimately establish its allegations, or whether there is evidentiary support for the complaint. (*See EBC I, Inc., v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 120-21 [1st Dept 2002].)

*Motion sequence 003*

Whether Plaintiff Has Adequately Alleged Proximate Causation

---

[4] While defendants move to dismiss plaintiff's cause of action for a manufacturing defect based on the proximate cause issue, it is the only cause of action that defendants' do not separately contend is insufficiently pled.

**153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL**
**Motion No.  003 004**

Taking the facts in the complaint as true and giving plaintiff the benefit of every possible favorable inference, as the Court must, it is clear that plaintiff has sufficiently alleged the proximate cause element of each cause of action, specifically, that his injuries was caused through exposure to The Laundress's contaminated products. To establish proximate cause, plaintiff must allege that defendants' negligence or action was a substantial cause of the event that caused the injury. (*Bindler v Lenox Hill Neighborhood House, Inc.*, 217 AD3d 440, 441 [1st Dept 2023].) Here, defendants maintain that plaintiff merely speculates that he contracted the bacterial infection through use of their products, especially since the November 17, 2022 Safety Notice suggested only a *potential* for contamination. In their view, these alleged facts do not give rise to a plausible inference that their conduct caused plaintiff's injuries. The Court disagrees. Plaintiff alleges (1) he purchased and regularly used any number of The Laundress Products between 2019 and 2022, (2) The Laundress recalled many of those products for a possible *Klebsiella aerogenes* contamination, and (3) he suffered a bacterial infection during this period of time — all of which does, in fact, create a plausible inference that he contracted the infection through use of its products. Were the Court to find this timeline insufficient at the pleading stage, as defendants suggest, it would, in essence, be requiring plaintiff to rule out other possible sources of contamination other than the obvious one before he could sufficiently plead proximate causation in this action. The Court further notes that defendants' moving papers do not cite any caselaw that supports dismissal, based on the absence of proximate causation, where a plaintiff has alleged contact with a defective product for which the defendant has later issued a voluntary recall. Accordingly, the facts as alleged in the complaint support a plausible inference that he

contracted the bacterial infection through use of defendants' products. Dismissal is not warranted on such grounds.

## Plaintiff's Defective Design Claim

A defectively designed product is one which, "at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use," and "whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." (*Hoover v New Holland North America, Inc.*, 23 NY3d 41, 53-54 [2014], quoting *Voss*, 59 NY2d 102, 107 [1983]; *see Rose v Brown & Williamson Tobacco Corp.*, 53 AD3d 80, 82 [1st Dept 2008].) In turn, whether a product is "not reasonably safe" is judged by looking to whether the reasonable person, if they knew of the alleged design defect at the time of manufacture, would conclude that the utility of the product was outweighed by the risk inherent in marking a product designed in that manner. (*See Brown & Williamson*, 53 AD3d at 81.) In weighing the utility and risk of a product, factors to be considered, among others, the utility to the public as a whole, the likelihood of injury to the consumer, the availability of a safer design, and the price that would accompany the alternative design. (*Voss*, 59 NY2d at 109; *M.H. v Bed Bath & Beyond Inc.*, 156 AD3d 33, 36-37 [1st Dept 2017].) Lastly, a plaintiff must show that the defect in the product was a substantial factor in causing the injury. (*Voss*, 59 NY2d at 110).

Here, defendants argue that plaintiff has failed to allege facts demonstrating the presence of a design defect, that the only allegations of a design defect is that bacteria was somehow

**153041/2024   KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL**
**Motion No.  003 004**                                                   Page 7 of 13

7 of 13

[* 7]

permitted to contaminate one of its household products. (*See* NYSCEF doc. no. 22, ¶ 121.) This argument, on its face, does not challenge plaintiff's allegation that the cleaning products were not in a reasonably safe condition as contemplated by the consumer and that they were unreasonably safe for their intended use. (*See Voss*, 59 NY2d at 107; *Yun Tung Chow v Reckitt & Coleman, Inc.*, 17 NY3d 29, 33 [2011] ["If the 'utility' of a product does not outweigh the danger inherent in its introduction into the stream of commerce, then the product is defectively designed"].) Rather, in essence, they contend that any contamination that occurred cannot be considered part of the products' design. Whether this is true (as with most contamination product liability cases), however, cannot not be decided at the pleading stage, as the widespread availability of alternative cleaning products available on the market, all without the risk of bacterial contamination, may suggest a design defect inherent in the composition of defendants' products that make them particularly susceptible to bacterial contamination. Given New York's lenient notice pleading standard and the fact that the Court is obligated to give plaintiff the benefit of every favorable inference, the Court finds that plaintiff has adequately pled this cause of action. Defendants' sole citation is to a 2020 Bronx County, Supreme Court case, a case which is neither binding authority nor concerns itself with design defects in a contaminated product.

Plaintiff's Failure to Warn Claim

A product may be considered "defective" in New York, and the manufacturer liable, if the product is not accompanied by adequate warnings for the use of the product. (*Matter of Eighth Judicial District Asbestos Litigation*, 33 NY3d 488, 493-494 [2019].) Accordingly, a manufacturer can be held liable for failing to warn consumers of latent dangers resulting from

**153041/2024** KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No. **003 004**

Page 8 of 13

[* 8]

8 of 13

foreseeable uses of its products which it either knows or should know. (*Id.* at 495.) Further, a manufacture's duty "also includes a legal obligation to issue warnings regarding hazards arising from foreseeable uses of the products about which the manufacturer learns after the sale of the product." (*In re New York City Asbestos Litigation*, 27 NY3d 765, 788 [2016].) This duty extends not only to original purchasers of the product, but also the "ultimate purchasers of the product, to employees of those purchasers, and to third persons exposed to a foreseeable an unreasonable risk of harm by the failure to warn." (*Id.* at 788-789.) This is because, under New York law, the manufacturer is considered to be in the best position to learn about post-sale defects, and dangers discovered about the products in question. (*Id.* at 790.) The criteria whether a duty should attach to a seller includes factors such as whether "a defendant's control over the design of the product, its standardization, and its superior ability to know-and warn about-the dangers inherent in the products reasonably foreseeable uses or misuses." (*Matter of Eight Judicial District Asbestos Litigation*, 33 NY3d at 496.)

Here, defendants argue that plaintiff has failed to allege facts that they "knew or should have known" of the dangers associated with The Laundress products before the Safey Notice and voluntary recall or at the time that plaintiff purchased the products. (NYSCEF doc. no. 27 at 12, *citing Goldin v Smith & Nephew, Inc.*, 2013 US Dist. LEXIS 58811, at *14-15 [S.D.N.Y. 2013].)[5] The Court finds this argument unpersuasive. Plaintiff alleges in his amended complaint that defendants should have known of the dangers that were present in their products during

---

[5] The Court notes that defendants' citation to *Goldin v Smith & Nephew, Inc.* is not dispositive as the Southern District of New York dismissed the failure to warn claim under the more stringent standard of Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (*See Golden*, at *14-15 [requiring plaintiff to make "a plausible claim" of misrepresentation and/or "a reasonable inference" that the lack of warning was a substantial factor in causing the accident.].) The same can be said for defendants' citation to *Devey v Big Lots* (635 F Supp 3d 205 [W.D.N.Y]) as it relates to dismissal of plaintiff's claim under GBL §§349 and 350.)

153041/2024 KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No. 003 004

Page 9 of 13

9 of 13

[* 9]

quality assessment and that monitoring would have revealed the presence of *Klebsiella aerogenes* in raw materials, in third-party production sites, in the production machinery, on manufacturing sites, and in final products. (NYSCEF doc. no. 22, ¶ 35; *Matter of Eighth Judicial District Asbestos Litigation*, 33 NY3d at 495.) Further, plaintiff alleged that the existence of other cleaning product recalls and the existence of 11 consumer complaints of *pseudomonas* infections prior to The Laundress's recall would have given defendants ample notice of issues with its products during and after their continued sale. (NYSCEF doc. no. 22, ¶ 50; *In re New York City Asbestos Litigation*, 27 NY3d at 788.) Considering the length and scope of the alleged contamination, and plaintiff's allegations that product packaging or advertising never warned that the product may contain bacteria, in either safe or unsafe levels (NYSCEF doc. no. 22, ¶ 22), the Court finds that plaintiff has sufficiently plead a cause of action for failure to warn at this time.

Plaintiff's Breach of Express Warranty and GBL §§ 349 and 350 Claims

In order for a plaintiff to succeed under a breach of express warranty claim, the plaintiff must establish that they relied on an express warranty made by the seller, and that they were injured as a result of the breach in said warranty. (*See CBS Inc. v Ziff-Davis Pub. Co.*, 75 NY2d 496, 503 [1990]; *Fiuzzi v Paragon Sporting Goods Co. LLC*, 212 AD3d 431 433 [1st Dept 2023]; *M.H. v Bed Bath & Beyond Inc.*, 156 AD3d 33, 38 [1st Dept 2017].) Pursuant to UCC § 2-313, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Notably, it is not necessary for

**153041/2024   KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL**
**Motion No.  003 004**
**Page 10 of 13**

[* 10]
10 of 13

the seller to use the formal words "warrant" or "guarantee" in order for a warranty to be created, nor does the seller need to intend that a warrant be made. (UCC § 2-313[2].)

Here, defendants argue that plaintiff does not allege where, when or how warranties based on the products being "allergy free," "natural," and "safe" were communicated to him.[6] However, in paragraph 151 of his amended complaint, plaintiff alleges, "[t]he Defendants stated in the product literature, including but not limited to product containers, advertising, emails, and viral advertising, which the Plaintiff read and relied upon, that LAUNDRESS products were 'non-toxic', 'safe', 'natural' and 'allergy-free.'" (NYSCEF doc. no. 22, ¶ 151). Plaintiff has also adequately pled that the warranty for "safe" has been breached, as defendants themselves stated within the Safety Notice that "the potential presence of elevated levels of bacteria in some of our products that present a safety concern." (*Id.* at ¶ 75.) Defendants further argue that the presence of a bacteria does not amount to a breach because the bacteria does not affect whether the product was "natural" or "allergy free." (NYSCEF doc. no. 27 at 13-14.) However, defendants' papers do not provide a definition of "natural" and "allergy free" for the Court to assess whether plaintiff failed to plausibly allege a warranty and a breach. In any event, it should also be noted, in its reply papers, defendants admit that they "did not move to dismiss Plaintiff's warranty claim as to 'non-toxic.'" (NYSCEF doc. no. 34 at 12-13.) Accordingly, defendants would not be entitled to dismissal of this claim regardless.

The same applies to plaintiff's GBL §§ 349 or § 350 claims. By alleging that defendants "falsely market[ed] and [sold] products... as safe for everyday use, safe for human exposure,

---

[6] While a statement that merely commends the product may be considered puffery and, thus, unactionable, defendants did not raise this argument on their motion. (*See* UCC § 2-313[2].)

153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No. 003 004

Page 11 of 13

healthier products than ordinary or competitor cleaning products, non-hazardous, non-toxic, utilizing natural ingredients and eco-friendly chemicals that are allegedly better for customers' bodies, and the environment, as premium or luxury qualify, effective, and reliable," plaintiff has adequately alleged that defendants' conduct was consumer-oriented, materially deceptive or misleading, and led to plaintiff's injuries. (*See Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc.*, 37 NY3d 169, 176 [2021]; *Koch v Acker, Merrall & Condit Co.*, 18 NY3d 940, 941 [2012].)

Punitive Damages

Punitive damages "may not be awarded absent sustainable compensatory damages" (*Rivera v City of New York*, 40 AD3d 334, 344 [1st Dept 2007]), as "punitive damages 'are merely an element of the total claim for damages on . . . underlying causes of action.'" (*Jean*, 163 AD3d at 498, quoting *Greenview Trading Co. v Hershman & Leicher*, 108 AD3d 468 [1st Dept 1985].) As such, where a plaintiff interposes a separate cause of action for punitive damages, the cause of action must be dismissed. (*Jean v Chinitz*, 163 AD3d 497, 498 [1st Dept 2018].) Accordingly, the portion of defendants' motion seeking to dismiss plaintiff's claim for punitive damages is granted to the extent that the claim for punitive damages is a separate claim.

Since defendant New London Pharmacy joined defendant The Laundress' motion, its motion is denied to the same extent.

**153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL**
**Motion No.  003 004**

Page 12 of 13

The Court has considered all other arguments and finds them to be unavailing or without merit.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that The Laundress's motion to dismiss pursuant to CPLR 3211 (a)(7) is granted solely as to plaintiff's cause of action for punitive damages, and otherwise denied; and it is further

ORDERED that New London Pharmacy's motion to dismiss pursuant to CPLR 3211 (a)(7) is granted solely as to plaintiff's cause of action for punitive damages, and otherwise denied; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this order, along with notice of entry, on all parties within twenty (20) days.

This constitutes the Decision and Order of the Court.

| 2/26/2026 | | | | |
|-----------|---|---|---|---|
| DATE | | | DAKOTA D. RAMSEUR, J.S.C. | |

CHECK ONE:

| | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | GRANTED | DENIED | | GRANTED IN PART | X | OTHER |

APPLICATION: SETTLE ORDER / SUBMIT ORDER

CHECK IF APPROPRIATE: INCLUDES TRANSFER/REASSIGN / FIDUCIARY APPOINTMENT / REFERENCE

153041/2024  KONG, SEUNGOOK vs. THE LAUNDRESS, LLC. ET AL
Motion No.  003 004

Page 13 of 13